IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of NOELLE LYNN BARRETT (NKA WOITT), | ) ) ) ) | No. 80764-1-I |
| Respondent, | ) ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) ) | |
| DANIEL J. BARRETT, | ) ) | |
| Appellant. | ) | |

BOWMAN, J. — Daniel Barrett appeals a trial court order determining that Noelle Woitt purged a previous finding of contempt, denying his renewed motion to hold Woitt in contempt, and awarding Woitt attorney fees based on Barrett's intransigence. We affirm.

FACTS

On January 4, 2010, the trial court entered a parenting plan providing for the care of Woitt and Barrett's seven-year-old daughter A.B. The parties brought many disputes over residential time to the court over the next nine years. On April 25, 2019, a family court commissioner found Woitt in contempt for failing in bad faith to "coerce" A.B. to visit with Barrett on October 13, 2018 as required by the residential provisions of the parenting plan. The commissioner ordered

"make-up parenting time" for Barrett and directed Woitt to purge the contempt by obtaining counseling "to help with co-parenting in high conflict relationships." The commissioner also ordered Barrett to enroll in the same type of counseling with A.B. and directed both parties to provide documentation of their compliance at a review hearing set for June 6, 2019.

At that review hearing, the commissioner found Woitt "in partial compliance w[ith] the court's order and purge conditions." In an order dated June 10, 2019, the commissioner determined that Woitt was complying with the parenting plan and had submitted, although untimely, evidence that she was engaged in counseling. The commissioner also found that Barrett's choice of Paula Van Pul as the counselor to provide joint counseling for him and A.B. was not in A.B.'s best interest because Van Pul was also Barrett's "individual counselor." Instead, the commissioner ordered Barrett to contact Nexus Youth and Families to schedule a counseling session for A.B. The commissioner awarded Barrett make-up days for missed visitation and ordered him to arrange a counseling session with A.B. during that residential time.

On July 4, 2019, 17-year-old A.B. spent the day with Barrett as make-up residential time. Barrett and Woitt had agreed that Woitt would pick up A.B. late in the evening, after a fireworks show. But after Barrett and A.B. argued, Barrett refused to allow Woitt to pick up A.B. and insisted that A.B. stay until morning. Ultimately, Woitt picked up A.B. from the fireworks show.

A.B. was next scheduled to visit Barrett on July 10, 2019. Rather than visit with Barrett as scheduled, A.B. "ran away from home." On August 5, 2019,

A.B. petitioned for a protection order against Barrett, explaining that she was fearful of him. The trial court issued a temporary protective order but dismissed the petition when A.B. failed to appear at a subsequent hearing. On September 18, 2019, A.B. filed a petition for emancipation in Pierce County Superior Court and attached 10 supporting declarations, including 2 declarations from her half-siblings describing Barrett's physical and mental abuse.[1]

On October 16, 2019, Barrett and Woitt appeared in King County Superior Court for a review hearing requested by Barrett to determine only whether Woitt fully complied with the April 25, 2019 contempt order. The court considered materials filed by both Barrett and Woitt before the hearing. A.B. attended the hearing with counsel but the court decided to rely on the declarations submitted by the parties rather than question A.B. or allow her to participate in the hearing.

At the hearing, Barrett pointed out that courts had found Woitt in contempt of the parenting plan "five times in three years." Then, Barrett asked the court to find Woitt in contempt again because (1) he had not had visitation with A.B. since July 4, 2019; (2) only jail time would make Woitt comply; (3) A.B. did not run away from home on July 10, 2019 but stayed with her grandmother, while Woitt fabricated a report to the police to "cover up" her contempt; (4) Woitt coached A.B. and others to file A.B.'s emancipation petition and supporting declarations to include "slander" against him; (5) Woitt's attorney was "obviously in on it, coaching [Woitt] and [A.B.] all the way"; (6) none of Woitt's and others' claims that A.B. is fearful of him had "ever been even scarcely proven"; (7) Woitt

---

[1] Barrett has six children from a prior marriage. There is a permanent restraining order prohibiting Barrett from contacting all the children and his former wife.

prevented A.B. from participating in reunification counseling with him; and (8) given A.B.'s age, the court should take advantage of the "last chance to salvage the father/child relationship." Woitt responded that she (1) had not coached or influenced A.B., who independently obtained counsel and pursued emancipation; (2) had text communication with A.B. after she ran away but could not convince A.B. to visit Barrett; (3) agreed to the July 4, 2019 make-up visitation date despite Barrett's failure to schedule a counseling session on his make-up day as required by the commissioner's order; and (4) had begun seeing a counselor as directed by the court. Woitt's attorney also asserted, "I've not been involved in coaching or coercing or involving [A.B.] in the case."

The court found that Woitt had "complied" with and "purged the conditions set forth in the Contempt Order" and that Woitt "was not able to force [A.B.] to go on visitation with Mr. Barrett." The court ordered Barrett to pay attorney fees to Woitt based on a finding of intransigence:

> If he truly wished to develop and maintain a healthy relationship with [h]is daughter, [A.B.], he would have taken steps as ordered by the Court to schedule counseling. Instead, as was evidenced by the attachments in the mother's Declaration, he ignored his duties that would further the ball towards this alleged goal and continued attacking Ms. Woitt.

The court entered a written order on October 17, 2019, finding that (1) A.B. "clearly did not want to visit with her father out of fear of emotional and physical abuse," (2) A.B. was "almost 18 years-old" and did "not appear to be residing with the mother or under her control in any way," (3) Woitt "attempted to comply with the court orders but could not do so when the child refused to attend visitation with her father," and (4) the "issues and motions" Barrett raised in his

4

declaration "were made in bad faith and constitute intransigence." The trial court awarded Woitt $2,180 in attorney fees.

Barrett filed a motion for reconsideration, contending the judge showed bias and committed evidentiary errors resulting in an unfair hearing. In particular, Barrett claimed that the trial judge (1) "made up lies regarding the record"; (2) "re-litigated already-settled issues"; (3) "is overtly bias[ed] against fathers"; (4) defied the Supreme Court's holding in In re Marriage of Rideout, 150 Wn.2d 337, 77 P.3d 1174 (2003); (5) showed bias and lack of concern for A.B.'s best interests by allowing A.B. to attend the hearing but not allowing her to testify; (6) "testified" to Barrett's "state of mind"; (7) is a "rogue judge who finds that withholding a child repeatedly for years is perfectly fine"; and (8) ignored Barrett's objections during the hearing but sustained similar objections by Woitt's attorney. The court denied Barrett's motion for reconsideration.

Barrett appeals.

ANALYSIS

Barrett first contends that the trial court erred by finding him in contempt for failing to contact Nexus Youth and Families as directed by the commissioner in the June 10, 2019 order. He argues that the order preventing him from using Van Pul as a counselor was reversed on revision[2] and that he would have started counseling but for A.B.'s refusal to participate. Because Barrett bases this claim on a mischaracterization of the record, we disagree.

_____

[2] On August 26, 2019, a King County Superior Court judge granted in part Barrett's motion for revision of the commissioner's June 10, 2019 order, concluding that it is not a conflict of interest for Barrett's individual counselor to also provide reunification counseling to Barrett and A.B.

At the October 16, 2019 hearing, the trial court explicitly stated that (1) Barrett was "the moving party," (2) the review hearing would be limited to Woitt's compliance with the April 25, 2019 order, (3) the August 26, 2019 order on revision was not before the court, (4) "the issue of the father's compliance" to engage in counseling with A.B. was not before the court, and (5) the award of attorney fees to Woitt was not based on Barrett's failure to comply with the commissioner's June 10, 2019 order. The written order also states, "Mr. Barrett's compliance [to engage in counseling] . . . is not at issue in this review hearing." While Barrett disagrees with the trial court's finding that he did not "follow through" with engaging in counseling with A.B., he fails to show grounds for relief because the trial court did not find him in contempt of any order.

Barrett next contends that the trial court erred by failing to find Woitt in contempt. We disagree.

"Contempt" includes "intentional . . . [d]isobedience of any lawful . . . order . . . of the court." RCW 7.21.010(1)(b). When determining whether a party has intentionally disobeyed an order, the trial court strictly construes the order and decides whether the facts constitute a plain violation of the order. Johnston v. Beneficial Mgmt. Corp. of Am., 96 Wn.2d 708, 712-13, 638 P.2d 1201 (1982). The "strict construction" rule protects parties from contempt proceedings based on alleged violations of ambiguous or unclear orders. Graves v. Duerden, 51 Wn. App. 642, 647-48, 754 P.2d 1027 (1988). When a trial court finds that a parent has not complied with the residential provisions of a parenting plan in bad faith, the court "shall find" the parent in contempt of court. RCW 26.09.160(2)(b);

6

Rideout, 150 Wn.2d at 349. On appeal of contempt proceedings based on written submissions in a family law matter, we review the trial court's findings of fact for substantial evidence and determine whether the findings support the conclusions of law. Rideout, 150 Wn.2d at 349-50.

Relying on Rideout, Barrett contends that (1) the parenting plan and the commissioner's April 25, 2019 order required Woitt to "coerce" A.B. to visit Barrett; (2) res judicata and collateral estoppel barred relitigation of whether Woitt encouraged A.B. to visit Barrett and whether A.B. was afraid of Barrett; and (3) the evidence established Woitt's actions of "withholding, harboring, brainwashing, coaching and alienating" A.B. from Barrett.

In Rideout, the trial court found that the mother acted in bad faith in violating the residential schedule as she "was a 'competent, and capable parent' with the ability to require her 13-year-old daughter to comply with the court's orders 'yet . . . failed to do so.' " Rideout, 150 Wn.2d at 347, 353.[3] We affirmed the trial court's finding based on evidence that the mother " 'either contributed to the child's attitude or failed to make reasonable efforts to require the child to comply.' " Rideout, 150 Wn.2d at 353-54 (quoting In re Marriage of Rideout, 110 Wn. App. 370, 379, 40 P.3d 1192 (2002)). Our Supreme Court also concluded that the trial court was justified, observing that

> while a parent should not be punished for the actions of a truly recalcitrant child, punishment is appropriate when the parent is the source of the child's attitude or fails to overcome the child's

---

[3] Alteration in original.

recalcitrance when, considering the child's age and maturity, it is
within that parent's power to do so.

Rideout, 150 Wn.2d at 356.

Rideout does not support Barrett's claim that a parent necessarily has the
responsibility to "coerce" an obstinately defiant or stubbornly disobedient 16- or
17-year-old child to visit another parent. Instead, Rideout gives the trial court
discretion to evaluate the credibility of the parties and witnesses and the weight
and persuasiveness of the evidence to determine whether a child is recalcitrant,
whether the parent caused or contributed to the child's attitude, and whether the
best interests of the child—a discretionary consideration based on the child's
"age and maturity"—justify requiring the parent to "coerce" a child to comply.
Rideout, 150 Wn.2d at 350-51, 356.

Here, the trial court examined conflicting evidence and considered A.B.'s
best interests. See Rideout, 150 Wn.2d at 349 n.4 (Citing RCW 26.09.002 that
provides, in pertinent part, "In any proceeding between parents under this
chapter, the best interests of the child shall be the standard by which the court
determines and allocates the parties' parental responsibilities."). The trial court
based its findings in part on declarations from Barrett's older children that A.B.
filed with her emancipation petition. The court found that A.B. refused to visit
Barrett after July 4, 2019 because she feared "being emotionally and physically
abused by" him and that those declarations "support[ed] the validity of the child's
fear." The court also found that Woitt was "not able to ensure" A.B.'s visits with
Barrett despite her "willingness" to do so. Barrett does not show error under
Rideout.

8

Similarly, Barrett cannot rely on the doctrines of res judicata and collateral estoppel. Res judicata bars an action when a prior judgment involved identical (1) subject matter, (2) claims or causes of action, (3) persons and parties, and (4) quality of persons for or against whom the claims are made. Rains v. State, 100 Wn.2d 660, 663, 674 P.2d 165 (1983). Collateral estoppel bars litigation of the same issues between the parties, regardless of a difference in cause of action, if (1) the issues are identical, (2) the prior adjudication included a final judgment on the merits, (3) the party against whom the bar is to be applied is identical to or in privity with a party to the prior adjudication, and (4) application will not work an injustice. Rains, 100 Wn.2d at 665. Nothing in the record shows a prior adjudication on the merits of Woitt's compliance with the purge conditions in the April 25, 2019 contempt order, the truth or reasonableness of A.B.'s alleged fear of Barrett after the July 4, 2019 incident, or the truth or reasonableness of Woitt's claim that she and her attorney did not direct or influence A.B. to seek a protective order or file an emancipation petition. Barrett fails to meet his burden to satisfy the requirements of either res judicata or collateral estoppel.

Finally, our review of the record reveals substantial evidence to support the trial court's findings that Woitt had purged the commissioner's finding of contempt and did not act in bad faith. At the hearing, Barrett argued that the court should disregard as not credible Woitt's declarations, A.B.'s declarations, statements filed in other proceedings, and witness statements filed in support of the emancipation petition that supported Woitt's claim that she encouraged A.B. to visit Barrett, that A.B. expressed fear of Barrett and ran away from home, and

9

that she maintained contact with A.B. but could not persuade her to visit Barrett after the July 4, 2019 incident. Instead, Barrett asserted that the trial court should believe only his characterization of Woitt's actions and motivations as an effort to undermine his relationship with A.B. and cover up her own bad faith.

The trial court sided with Woitt. It noted that Barrett's adult son and A.B.'s half-brother described Barrett in a declaration as "violent, manipulative, controlling, narcissistic, and egocentric" and that the son "has gone so far as taking legal custody of his younger siblings . . . to protect them from Mr. Barrett." The trial court found those statements and others "significant" when "assessing whether the breakdown of connection between Mr. Barrett and [A.B.] should be blamed completely on Ms. Woitt." Trial courts are in a better position to weigh competing documentary evidence and resolve conflicts when credibility is at issue, even when the record is entirely documentary. Rideout, 150 Wn.2d 350-51. We do not review the trial court's credibility determinations or weigh evidence on appeal. In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). Barrett fails to show that the trial court abused its discretion in finding that Woitt was not in contempt and had met the purge conditions of the April 25, 2019 contempt order.

Barrett also challenges the order denying his motion for reconsideration, arguing that the outcome of the contempt review hearing "can ONLY be explained by an overt, egregious bias against [him]." We review a trial court's order on reconsideration for a manifest abuse of discretion. Drake v. Smersh, 122 Wn. App. 147, 151, 89 P.3d 726 (2004), abrogated on other grounds by

Gamboa v. Clark, 183 Wn.2d 38, 348 P.3d 1214 (2015). We do not presume bias or prejudice on the part of a judge; the party asserting it must affirmatively show improper judicial bias. Rich v. Starczewski, 29 Wn. App. 244, 246, 628 P.2d 831 (1981). "Casual and unspecific allegations of judicial bias provide no basis for appellate review, even when asserted by a pro se litigant." Rich, 29 Wn. App. at 246.[4] "We . . . review a trial judge's courtroom management decisions for abuse of discretion." In re Marriage of Zigler & Sidwell, 154 Wn. App. 803, 815, 226 P.3d 202 (2010).

Our review of the record, including the transcript of the hearing and Barrett's motion for reconsideration, persuades us that Barrett has not affirmatively shown bias or prejudice. The trial judge stated on the record that she had reviewed all the materials filed by the parties; acknowledged that A.B. was present with her attorney, but stated that she would not question A.B.; clarified the purpose of the hearing as determining whether Woitt had purged the contempt finding in the April 25, 2019 order; allowed each side 10 minutes to argue; and explained her ruling. As the fact finder, the judge did not "testify" or "lie" about the record as Barrett asserted in his motion for reconsideration. The judge identified the evidence she considered, made findings of fact, and explained those findings to the parties. While Barrett may have perceived the proceedings differently—that the judge showed bias or prejudice against him and fathers generally—the record shows that the judge found the evidence presented by Woitt to be more credible and persuasive than Barrett's firmly held belief that

---

[4] Barrett represented himself below and on appeal.

11

Woitt had manipulated A.B. and others to interfere with his relationship with A.B. The trial court did not abuse its discretion in denying reconsideration.

Next, Barrett challenges the trial court's award of attorney fees to Woitt based on its finding of his intransigence. We review a trial court's award of attorney fees for abuse of discretion. Scott Fetzer Co., Kirby Co. Div. v. Weeks, 122 Wn.2d 141, 147, 859 P.2d 1210 (1993). When a party moves for contempt under RCW 26.09.160, the trial court may award attorney fees to the nonmoving party "if the court finds the motion was brought without reasonable basis." RCW 26.09.160(7). A court may award attorney fees for intransigence based on foot-dragging, obstruction, or "simply" making the proceedings "unduly difficult" and causing "increased legal costs." In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992).

After reviewing Barrett's written submissions and listening to his argument at the hearing, the trial court rejected his case theory that Woitt engineered A.B.'s (1) flight from his car on July 4, 2019, (2) refusal to visit with him after July 4, 2019, (3) petition for a protection order, and (4) petition for emancipation. The trial court did not abuse its discretion by determining, based on the evidence presented at the hearing, that Barrett lacked a reasonable basis for continuing to insist that Woitt was solely to blame. Barrett fails to show grounds for relief as to the attorney fee award.

Finally, Barrett filed an untimely reply brief on September 4, 2020, nearly two months after the July 8, 2020 due date, without moving to extend the time for filing. Barrett also attached to his reply brief several documents that neither party

designated as part of the record on appeal.  We have reviewed the untimely reply brief, which consists largely of allegations of sanctionable conduct by Woitt's counsel, characterizations of the record consistent with those in his opening brief, and repetition of claims of wrongdoing by Woitt and bias on the part of the trial judge.  Barrett's reply does not show a basis for relief.

In her response brief, Woitt moves to strike portions of Barrett's opening brief and "the entire" 21-page appendix attached to the brief, for appellate costs, and for sanctions in the form of an attorney fee award for violating the Rules of Appellate Procedure.  We deny the motion to strike as unnecessary in the context of this case as we did not consider any materials that were not part of the record and no rule violation affected the outcome.

RAP 18.9(a) authorizes an award of attorney fees as a sanction for filing a frivolous appeal.  An appeal is frivolous if the appellant presents no debatable issues on which reasonable minds might differ and presents issues "so totally devoid of merit that there is no reasonable possibility of reversal."  In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013).  We resolve all doubts on frivolousness in favor of the appellant.  Schnurman, 178 Wn. App. at 644.  Given the complex history of this case and potential for confusion, also recognized by the trial judge, we exercise our discretion and deny the request for attorney fees.  But as the prevailing party, Woitt is entitled to costs under RAP 14.2.[5]  We therefore grant her motion for costs upon compliance with RAP 14.4.

---

[5] Under RAP 14.2, "the appellate court will award costs to the party that substantially prevails on review."

Barrett fails to show that the trial court abused its discretion in finding that Woitt had purged her previous contempt of court, denying his renewed motion to hold Woitt in contempt, and awarding Woitt attorney fees based on Barrett's intransigence.  We affirm.

_Brennan, J_

WE CONCUR:

_Chun, J._  _Andrus, A.C.J._

14