IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOHN L. WAGGONER and GERALDINE F. WAGGONER, husband and wife, | ) ) ) ) | No. 37180-8-III |
| Respondents, | ) ) | |
| v. | ) ) | |
| STIMSON LUMBER COMPANY, an Oregon Corporation; THE McCORMICK FAMILY TRUST; | ) ) ) ) | UNPUBLISHED OPINION |
| Defendants, | ) ) | |
| PETE D. McCORMICK and LINDA J. McCORMICK, husband and wife, CARL KOSTOFF and JO ELLEN KOSTOFF, husband and wife, | ) ) ) ) | |
| Appellants. | ) | |

LAWRENCE-BERREY, J. — The McCormicks and the Kostoffs appeal the trial

court's dismissal of their counterclaim for attorney fees. We affirm.

FACTS

In 1986, John Les Waggoner and his wife Geraldine F. Waggoner (the Waggoners) purchased property in the Scotia Valley, Pend Oreille County. An old abandoned railroad line ran through their property. In 1988, Louis and Barbara Waggoner moved onto property next door. Louis and John are brothers.

Before 1988, residents of the Scotia Valley drove on the railroad right-of-way (RROW) to access their homes. In 1988, the Waggoners removed the remaining railroad spikes and used their grader to push the existing gravel to widen the road. Since 1988, the Waggoners regularly used and maintained Makai Lane by plowing it in the winter, mowing weeds in the summer, grading it with gravel, and trimming overhanging trees. The RROW-turned-private-road has long been referred to as Makai Lane and is at the center of this dispute.[1]

Around 2005, the Waggoners purchased property immediately to the southeast— labeled "Pearson" on the map—and listed their property for sale. In March 2005, the Waggoners entered into a purchase and sale agreement (PSA) with Peter and Linda McCormick. A provision of that agreement reads:

---

[1] For the benefit of the reader, we attach a map as an appendix to this opinion. The map, which reflects property ownership in late 2017, shows how the various properties are situated with each other and Makai Lane.

**13.    GENERAL PROVISIONS:**

. . . .

**(g)  Attorney's Fees.**  If Buyer, Seller, or any real estate licensee or broker involved in this transaction is involved in any dispute relating to any aspect of this transaction or this Agreement, each prevailing party shall recover their reasonable attorneys' fees.  This provision shall survive Closing.

Ex. D-102 at 4.  Two months later, the Waggoners conveyed the property to the McCormicks by statutory warranty deed.  The deed did not mention Makai Lane or list any easement in the area of the road.

In 2006, the McCormicks moved onto the property they bought from the Waggoners.  Peter McCormick also helped maintain Makai Lane.  All of the residents on the west side of Makai Lane used the road to access their properties.  The Waggoners used the Little Spokane River Road to access their property, but also used Makai Lane weekly to visit Mr. Waggoner's brother and sister-in-law, who lived just south of the McCormicks.

From 2006 until 2012, there were no issues between the users of Makai Lane.  Everyone just "got along great."  Report of Proceedings (May 14, 2019) at 35.

In 2015, the Waggoners began building a shop on their property.  Mrs. McCormick complained to her husband that a construction worker was driving too fast on the private

road.  Mr. McCormick spoke pointedly to Mr. Waggoner about this and this discussion

sparked the acrimony that led to this litigation.

*Events underlying litigation*

In August 2015, counsel for the McCormicks notified the Waggoners that,

"whatever permission, either express or implied, you believe that you had from the

McCormicks to use their property is hereby terminated."  Clerk's Papers (CP) at 31.  The

letter warned that any future use "will be considered an intentional and criminal trespass."

CP at 31-32.  In September 2015, the McCormick Family Trust[2] sent a similar letter to the

Waggoners.  The effect of these letters was to block the Waggoners' use of Makai Lane

because the McCormicks owned the western portion and the McCormick Family Trust

owned the eastern portion.  Nonetheless, the Waggoners continued using Makai Lane.  In

May 2016, Louis and Barbara Waggoner sold their land to Carl and Jo Ellen Kostoff.

*Trial court proceedings*

In 2017, the Waggoners filed an action asserting a prescriptive easement over

Makai Lane and naming as defendants the Stimson Lumber Company, Peter and Linda

McCormick, the McCormick Family Trust, and Carl and Jo Ellen Kostoff.  Soon after, the

---

[2]  The trustees are Peter McCormick's brother and sister-in-law.

4

Waggoners obtained an easement from the McCormick Family Trust over the eastern portion of Makai Lane.

The McCormicks filed an answer and requested affirmative relief, including an award of attorney fees under various theories. The Kostoffs filed an answer requesting similar relief.

The Waggoners, having obtained easements that provided access over Makai Lane, dismissed their prescriptive easement claim. After various motions and voluntary dismissals, the claims remaining were the McCormicks' and the Kostoffs' counterclaims against the Waggoners for their attorney fees. Those claims were based on RCW 4.84.185, CR 11, the breach of the statutory warranties of quiet possession and the duty to defend, and the attorney fee provision in the Waggoner-McCormick PSA.

*Trial*

The parties tried the matter to the court, which later issued detailed findings and conclusions. The McCormicks and the Kostoffs do not assign error to any finding. Some of the conclusions of law we set forth below:

> 4. This court finds as a matter of law that the [Waggoners] had a rational basis in fact for their prescriptive easement claim.
> 5. The [Waggoners] used the railroad grade for 10 years [after the 2005 conveyance] in an open and notorious manner, their use was continuous and uninterrupted, their use occurred over a uniform route now commonly referred to as Makai Lane, and the use occurred with the

5

knowledge of Defendants MCCORMICK, at a time when the Defendants MCCORMICK were able to assert and enforce their rights.

6. As to Defendants KOSTOFF, the [Waggoners] have established a rational basis in fact for their prescriptive easement claim . . . by way of tacking,[3] in that the [Waggoners'] maintenance and use of the KOSTOFFS['] portion of the railroad grade has been consistent since 1988, when the [Waggoners] built the road now known as Makai Lane.

7. The [Waggoners] used the railroad grade for 10 years in an open and notorious manner, their use was continuous and uninterrupted, their use occurred over a uniform route now commonly referred to as Makai Lane, and the use occurred with the knowledge of Lou and Barbara Waggoner and then Defendants KOSTOFF, at a time when Lou and Barbara Waggoner and then Defendants KOSTOFF were able to assert and enforce their rights.

8. Most of the litigation has centered around the fourth element [for establishing a prescriptive easement], whether the use was adverse . . . .

9. This court finds as a matter of law, the [Waggoners] had a rational legal basis for their prescriptive easement claim and claim of adverse use.

CP at 480-81.

In addressing whether the lawsuit was frivolous under RCW 4.84.185, the trial court cited and quoted *Cuillier v. Coffin*, 57 Wn.2d 624, 627, 358 P.2d 958 (1961). It noted that *Cuillier* held that adverse use is more likely to be found where the user of the road made the road and used it for the prescriptive period. Based on the fact that Mr.

---

[3] The allusion to "tacking" is confusing. Because the Waggoners used Makai Lane for 10 years after they purchased the Pearson property, there is no need for them to "tack" onto the Pearsons' prior use.

Waggoner made the road in 1988 (by pulling out railway spikes and widening it), the trial court ruled that the Waggoners' assertion that their use was adverse was not frivolous.

The trial court also denied the McCormicks' other bases for requesting attorney fees. With respect to their statutory warranty claims, the trial court ruled: (1) there was no breach of quiet enjoyment because the Waggoners' prescriptive easement claim did not ripen until 10 years after the 2005 conveyance, and (2) there was no breach of duty to defend because the Waggoners were not a *third* party asserting a claim against the McCormicks. With respect to the 2005 PSA attorney fee provision, the trial court dismissed the claim based on the six-year statute of limitations. Alternatively, it ruled that the fee provision merged into the warranty deed.

The McCormicks and the Kostoffs timely appealed.

## ANALYSIS

A.   FRIVOLOUS ACTION COUNTERCLAIM

The McCormicks and Kostoffs contend the trial court erred in finding the Waggoners' prescriptive easement claim was not frivolous. We analyze the prescriptive easement question before turning to frivolity.

*Prescriptive easement*

A person claiming a prescriptive easement must prove that the use was (1) open

and notorious, (2) over a uniform route, (3) continuous and uninterrupted for 10 years,

(4) adverse, and (5) with the owner's knowledge at a time when they were able to enforce

their rights. *Kunkel v. Fisher*, 106 Wn. App. 599, 602, 23 P.3d 1128 (2001). We start

with the presumption that the use of another's property is permissive, not adverse. *Id.* at

601. Implied permission arises in situations where "it is reasonable to infer that the use

was permitted by neighborly sufferance or acquiescence." *Roediger v. Cullen*, 26 Wn.2d

690, 707, 175 P.2d 669 (1946).

We review whether a claimant has established the elements of a prescriptive

easement as a mixed question of fact and law. *Gamboa v. Clark*, 183 Wn.2d 38, 43-44,

348 P.3d 1214 (2015). We review the trial court's findings of fact for abuse of discretion

and review de novo whether the facts as found establish a prescriptive easement. *Id.* at

44.

There are numerous policy reasons supporting the presumption of permissive use

between neighbors. Our Supreme Court has noted:

> The law should, and does[,] encourage acts of neighborly courtesy; a
> landowner *who quietly acquiesces* in the use of a path, or road, across his
> uncultivated land, resulting in no injury to him, but in great convenience to
> his neighbor, ought not to be held to have thereby lost his rights. It is only

> when the use of the path or road is clearly adverse to the owner of the land, and not an enjoyment of neighborly courtesy, that the landowner is called upon "to go to law" to protect his rights.

*Id.* at 48 (alterations in original) (internal quotation marks omitted) (quoting *Roediger*, 26 Wn.2d at 709).

In *Roediger*, beachfront community residents established a path via communal use between their homes, which they communally maintained. 26 Wn.2d at 698. Many years later, the trial court granted the public an easement. *Id.* at 701. The Supreme Court reversed, reasoning, "the use of the pathway arose of out of mutual neighborly acquiescence; that is to say, it was permissive in its inception, a mere mutual privilege or license the benefits of which extended to the residents, and, of course, to their tenants and their visitors." *Id.* at 713.

In *Gamboa*, the Gamboas used a gravel road to access their home and alfalfa crop and occasionally bladed and applied gravel to it. 183 Wn.2d at 41. A few years later, the Clarks moved in nearby and began using the road to access and irrigate their grape crops. *Id.* For many years, the parties were aware of, and made no objections to, each other's use of the road. *Id.* After a dispute, the trial court granted the Gamboas a prescriptive easement. *Id.* We reversed, holding that the Gamboas failed to put forth evidence that they interfered with the Clarks' use in some manner and the record demonstrated

noninterfering use of the roadway constructed by the Clarks' predecessor. *Id.* at 42-43.

Our Supreme Court affirmed, confirming the presumption of permissive use and

clarifying its applicability on enclosed or developed lands when there is a reasonable

inference of neighborly acquiescence. *Id.* at 47. The court further held that to rebut the

inference, the claimant must present evidence that they interfered with the owner's use of

the land in some manner, which could include laying out a road and regularly improving

and maintaining it. *Id.* at 51-52.

### *Frivolous action*

Under RCW 4.84.185, a prevailing party in a civil action is entitled to seek fees for

defending a frivolous action. "'A frivolous action is one that cannot be supported by any

rational argument on the law or facts.'" *Hanna v. Margitan*, 193 Wn. App. 596, 612, 373

P.3d 300 (2016) (quoting *Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 340, 798

P.2d 1155 (1990)). A court can make a fee award when, after considering the evidence

presented, it determines that "the position of the nonprevailing party was frivolous and

advanced without reasonable cause." RCW 4.84.185. This decision falls squarely within

a trial court's discretion. *Escude v. King County Pub. Hosp. Dist. No. 2*, 117 Wn. App.

183, 194, 69 P.3d 895 (2003) (quoting *Walji v. Candyco, Inc.*, 57 Wn. App. 284, 290, 787

P.2d 946 (1990)). A defendant need not allege or prove a plaintiff had an improper

purpose to meet the frivolous action standard.  *Kilduff v. San Juan County*, 194 Wn.2d

859, 877, 453 P.3d 719 (2019); *Eller v. E. Sprague Motors & R.V.'s, Inc.*, 159 Wn. App.

180, 192, 244 P.3d 447 (2010).

We use similar standards for determining whether a matter is frivolous under

RCW 4.84.185 as for imposing sanctions under CR 11.  *Escude*, 117 Wn. App. at 193.

CR 11 sanctions deter baseless filings and curb abuses of the judicial system by punishing

those who file for improper purposes.  *Kilduff*, 194 Wn.2d at 877; *Stiles v. Kearney*, 168

Wn. App. 250, 261, 277 P.3d 9 (2012).  A baseless filing is one that is (1) not grounded in

fact, or (2) not warranted by (a) existing law, or (b) a good faith argument for the

alteration of existing law.  *Stiles*, 168 Wn. App. at 261.  An attorney who "'failed to

conduct a *reasonable inquiry* into the factual and legal basis for the claim'" before

signing and filing a pleading may be sanctioned for baseless filing.  *Id.* (quoting *Bryant v.

Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992)).

Invoking the CR 11 standards, the McCormicks and the Kostoffs argue the

Waggoners' prescriptive easement claim was frivolous because the Waggoners sold them

the land, warranted against defects, then claimed a defect in their favor and sought to

constructively evict them.  They argue this speaks to an improper purpose.  We disagree.

The Waggoners sued so they could continue using a road they built, maintained, and had

11

used for nearly 30 years. Although their legal theory would not have prevailed, we see nothing improper about the Waggoners bringing suit to maintain what they likely perceived as the status quo.

The McCormicks and the Kostoffs also argue the Waggoners failed to inquire into the law and overlooked the presumption of permissive use. We see no evidence of this. The Waggoners' attorney conducted a reasonable inquiry and concluded that *Cuillier* and *Gamboa* sufficiently supported his clients' claim—that because they built and maintained the road, they did so adversely to the rights of all true owners. None of the reasons put forth by the McCormicks convince us that the prescriptive easement claim was frivolous.

Our review of the findings and conclusions convinces us that the trial court correctly understood the law of prescriptive easement and the important inference favoring permissible use. This inference did not render the Waggoners' prescriptive easement claim frivolous, given that the Waggoners had evidence that arguably rebutted the inference. We conclude that the trial court did not abuse its discretion in ruling that the Waggoners' claim was not frivolous.

B.       INDEMNIFICATION COUNTERCLAIM

The McCormicks[4] contend the trial court erred in dismissing their claim for

indemnification for breach of the statutory warranties of quiet possession and the duty to

defend.  We disagree.

A statutory warranty deed contains both present and future warranties, including

five guarantees against title defects: (1) the warranty of seisin, (2) the warranty of right to

convey, (3) the warranty against encumbrances, (4) the warranty of quiet possession, and

(5) the warranty to defend.  RCW 64.04.030.  The first three are present covenants,

breached (if at all) at conveyance.  *Rowe v. Klein*, 2 Wn. App. 2d 326, 329, 409 P.3d 1152

(2018).  The latter two are future covenants, which are usually breached after conveyance

when a third party asserts a claim to the property.  *Id.*  The McCormicks properly focus on

the latter two covenants.

*Warranty of quiet possession*

The warranty of quiet possession, otherwise known as the warranty of quiet

enjoyment or the general warranty, is a future covenant that runs with the land.  *Rowe*,

2 Wn. App. 2d at 335 (citing *McDonald v. Ward*, 99 Wash. 354, 358, 169 P. 851 (1918));

---

[4] The Kostoffs purchased their property from Mr. Waggoner's brother and sister-in-law, not the Waggoners.  The Kostoffs therefore could not assert a breach of statutory warranty claim against the Waggoners.

13

18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE:

TRANSACTIONS § 14.3, at 121 (2d ed. 2004). That warranty is an "assurance by the

grantor that the grantee and the grantee's heirs and assigns shall enjoy [the land] without

interruption by virtue of paramount title, and that they shall not, by force of a paramount

title, be evicted from the land or deprived of its possession." *Foley v. Smith*, 14 Wn. App.

285, 290-91, 539 P.2d 874 (1975). The warranty of quiet possession is breached when

the buyer is actually or constructively evicted by someone holding paramount title *that*

*existed at the time of the conveyance*. *Id.* at 291.

There are two reasons we affirm the trial court's rejection of this warranty claim.

First, the Waggoners' prescriptive rights, if any, did not exist at the time of the

conveyance. Second, the only relief sought by the McCormicks was an award of attorney

fees, and attorney fees are not awardable for the breach of any warranty covenant other

than a breach of the duty to defend. *See Mellor v. Chamberlin*, 100 Wn.2d 643, 650, 673

P.2d 610 (1983) (Rosellini, J., concurring). For these reasons we affirm the trial court's

denial of this warranty claim.

### *Warranty to defend*

The warranty to defend is a future covenant that no lawful, *outstanding claim*

against the property exists. *Erickson v. Chase*, 156 Wn. App. 151, 158, 231 P.3d 1261

(2010). "The warranty to defend obliges the grantor to defend the grantee against subsequently asserted third party claims whether or not previously known." *Edmonson v. Popchoi*, 155 Wn. App. 376, 389, 228 P.3d 780 (2010), *aff'd*, 172 Wn.2d 272, 256 P.3d 1223 (2011). A breach of this future warranty occurs only where there is an actual or constructive eviction under paramount title. *Mastro v. Kumakichi Corp.*, 90 Wn. App. 157, 164, 951 P.2d 817 (1998).

There are two reasons we affirm the trial court's rejection of this warranty claim. First, the Waggoners did not have an outstanding claim against their own property when they sold it to the McCormicks. Their prescriptive easement claim began accruing only after the McCormicks purchased the land. Second, the Waggoners are not third parties.

C. THE PSA COUNTERCLAIM

The McCormicks contend the trial court erred in ruling that the six-year statute of limitations barred recovery of attorney fees under their PSA and erred again by misapplying the rule of merger. But there is a fundamental issue they fail to address.

The PSA authorizes a prevailing party in any dispute "relating to any aspect of this transaction or this Agreement" to recover their reasonable attorney fees. Ex. D-102, at 4 (General Provisions, 13(g)). The McCormicks do not argue what aspect of the transaction or the PSA relates to the Waggoners' assertion of a prescriptive easement

claim. We note that the Waggoners' claim did not even begin accruing until after the parties signed the PSA. We doubt there is any aspect of the transaction or the PSA that relates to this claim. Regardless, we will not scour several pages of small print in search of a clause to invoke. *See Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 808, 225 P.3d 213 (2009) (RAP 10.3(a)(6) requires a brief to include adequate argument and references to the relevant parts of the record.).

> D.      ATTORNEY FEES ON APPEAL

The McCormicks and the Kostoffs request an award of attorney fees and costs on appeal. We deny their request because they did not prevail on appeal.

The Waggoners also request an award of attorney fees on appeal. In a conclusory sentence, they describe the appeal as frivolous. A party requesting an award of attorney fees must devote a section of their opening brief to the request for fees. RAP 18.1(b). The Waggoners did not do this.

But more importantly, this appeal was not frivolous. An appeal is frivolous when it raises "no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists." *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 220, 304 P.3d 914 (2013). We resolve doubts of frivolity in favor of the appellant. *Hanna*, 193 Wn. App. at 615.

We question the relevance of Mr. Waggoner's road building in 1988 to his and his wife's 2017 prescriptive easement claim. That claim relates to the Waggoner-Pearson property, acquired by the Waggoners in 2005. There was no evidence that the Pearsons adversely used Makai Lane. And nothing the Waggoners did from 2005 on rebutted the presumption of permissiveness. Although this argument was not raised below or on appeal, it deftly undermines the Waggoners' prescriptive easement claim (for the Waggoner-Pearson property).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Siddoway, A.C.J.                                          Staab, J.

17

APPENDIX



## Pend Oreille County Interactive Property Search

November 4, 2017

Parcels

1:16,000

Pend Oreille County GIS