

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

WT PROPERTIES, LLC, a Washington limited liability company,

     Respondent,

   v.

LEGANIEDS, LLC, a Washington limited liability company; MODEL REMODEL, LLC, a Washington limited liability company; JASON LEGAT and JOHN/JANE DOE LEGAT, spouses, and the marital community comprised thereof; and DANIEL NIEDER and JOHN/JANE DOE NIEDER, spouses, and the marital community comprised thereof,

     Appellants.

No. 73752-0-I

DIVISION ONE

PUBLISHED

FILED: August 8, 2016

  COX, J. — Where the dominant and servient estates of an easement vest in the same person, the merger doctrine generally extinguishes the easement.[1] But merger does not apply where the rights of innocent third persons would be prejudiced.[2]

---

[1] Radovich v. Nuzhat, 104 Wn. App. 800, 805, 16 P.3d 687 (2001) (citing Coast Storage Co. v. Schwartz, 55 Wn.2d 848, 853, 351 P.2d 520 (1960)); RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 7.5 (2000).

[2] Id. (citing Mobley v. Harkins, 14 Wn.2d 276, 282, 128 P.2d 289 (1942)); RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 7.5 cmt. d; Id. § 7.5 reporter's note (citing Heritage Communities of N.C., Inc. v. Powers, Inc., 49 N.C. App. 656, 272 S.E.2d 399 (1980) (outstanding deed of trust is sufficient interest to prevent termination of easement by merger of dominant and servient estates)).

Here, the predecessors in interest to WT Properties, LLC reserved an easement for ingress, egress, and utilities in certain property that the parties to this litigation refer to as the "Access Strip." Thereafter, these same predecessors in interest granted a deed of trust to Viking Bank in the Access Strip and adjacent property. Later, these same predecessors in interest acquired title to the Access Strip. Thus, the dominant and servient estates of the easement vested in them at the same time. Because applying the doctrine of merger to extinguish the easement would have prejudiced the bank's security interest under these circumstances, merger does not apply. The trial court properly granted summary judgment to WT Properties.

The trial court also properly denied summary judgment on the cross motion of Leganieds, LLC, the fee owner of the Access Strip burdened by the easement. Leganieds's cross claim that the easement violates a restrictive covenant is not ripe for review. Thus, the trial court properly dismissed, without prejudice, this cross claim.

We affirm the trial court in all respects.

The material facts are not in dispute. The Maybrook Plat was established in 1948. The plat contains a restrictive covenant that contains both size and use restrictions. The former sets a minimum lot size of 6,000 square feet and a minimum lot width of 60 feet. The latter restricts property in the plat to "residence" uses.

In early 2006, Binod Prasad and Basant Prasad owned the property that is involved in this litigation. They are the predecessors in interest to WT Properties and Leganieds. These parties each now own parts of the property formerly

2

owned by the Prasads. Rehabitat Northwest Inc., who is not a party to this litigation, owned at times relevant to this dispute other parts of the property formerly owned by the Prasads.

In October 2006, the Prasads conveyed to Rehabitat property described as "Parcel I" and "Parcel II" in the diagram that follows. The Prasads expressly reserved in the deed to Rehabitat an easement from 170th Street for ingress, egress, and utilities in these two parcels. This is the Access Strip. The easement is for the benefit of the property—"Parcel A" and "Parcel B"—to the south on the diagram that follows.[3]

On February 14, 2007, the Prasads executed and delivered a deed of trust to their property—"Parcel A" and "Parcel B"—to Viking Bank. The deed of trust secured their financial obligations to the bank.

In May 2007, the Prasads and Rehabitat participated in a boundary line adjustment to their adjacent properties. The recorded documents for this adjustment show that this transaction vested the Prasads with title to the Access Strip.[4] At the same time, they also held an easement in the Access Strip. Moreover, Viking Bank held a deed of trust that encumbered both the Access Strip and the property it benefited to the south.

A diagram of the properties, as they appeared after the May 2007 boundary line adjustment, follows:

---

[3] Clerk's Papers at 135-37.

[4] Id. at 84, 85, 112, 151-52.

3



The Prasads defaulted on their loan from Viking Bank. In 2011, the bank directed a successor trustee under the deed of trust securing the bank's loan to conduct a nonjudicial foreclosure. The successor trustee did so, eventually conducting a trustee's sale in 2011.

WT Properties was the successful bidder at this trustee's sale. For reasons not relevant to this case, WT Properties obtained a trustee's deed only for Parcel A and Parcel B, and not also for the Access Strip, after this sale.

In 2012, the Prasads conveyed title to the Access Strip to Leganieds. The easement in the Access Strip was still of record.

In February 2014, WT Properties commenced this action, seeking to quiet title in the Access Strip to confirm the existence of the easement of record.

Leganieds answered and made a counterclaim to quiet title to eliminate this easement.

In October 2014, the trial court granted summary judgment in favor of Leganieds, ruling that it was the fee owner of the Access Strip. But the court reserved for a future determination whether WT Properties held an easement in the Access Strip. Neither party contests that ruling.

In April 2015, WT Properties moved for summary judgment, seeking to quiet title in the easement in the Access Strip. Leganieds made a cross motion for summary judgment, seeking to quiet title in the Access Strip free and clear of this easement. The trial court granted summary judgment to WT Properties, ruling that it held an easement in the Access Strip. The trial court denied Leganieds's cross motion to quiet title.

The court also dismissed, without prejudice, Leganieds's claim to enforce the restrictive covenant in the Maybrook Plat that limited the use of property in the plat to "residential" use. It did so on the basis that this claim was not ripe for consideration.

Leganieds appeals.

## MERGER AND EXCEPTIONS

Leganieds argues that the merger doctrine extinguished the easement in the Access Strip. It reasons that this is so because the Prasads simultaneously held both the easement and fee ownership in the Access Strip after the 2007 boundary line adjustment transaction. We hold that merger did not apply to extinguish the easement. To hold otherwise would prejudice Viking Bank, an innocent third person.

5

*Innocent Third-Person Exception*

Summary judgment is proper when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'"[5] There is a genuine issue of material fact if "'reasonable minds could differ on the facts controlling'" the litigation's outcome.[6] This court considers "the evidence and all reasonable inferences from [such] evidence in the light most favorable to the nonmoving party."[7]

We review de novo a trial court's grant of summary judgment.[8]

"Merger may occur when the fee interest and a charge, such as a[n] . . . encumbrance, vest in the possession of one person."[9] There is no merger "'where the party in whom the two interests are vested does not intend such a merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united, [or when merger] *would prejudice the rights of innocent third persons.*'"[10]

---

[5] Wuthrich v. King County, 185 Wn.2d 19, 24-25, 366 P.3d 926 (2016) (internal quotation marks omitted) (quoting Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005)); see also CR 56(c).

[6] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)), review denied, 181 Wn.2d 1023 (2014).

[7] Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

[8] Wuthrich, 185 Wn.2d at 24.

[9] In re Tr.'s Sale of Real Prop. of Ball, 179 Wn. App. 559, 564, 319 P.3d 844 (2014).

[10] Radovich, 104 Wn. App. at 805 (emphasis added) (quoting Mobley, 14 Wn.2d at 282).

Here, the Prasads reserved an easement for ingress, egress, and utilities in the Access Strip for the benefit of their property to the south (Parcels A and B) in their 2006 deed to Rehabitat. This Access Strip burdens the property beneath it because the easement provides access to and from 170th Street to the north for the benefit of the property to the south.

In February 2007, the Prasads executed and delivered a deed of trust to Viking Bank to secure their financial obligations to the bank. The deed of trust granted a security interest in the following described property:

. . .

*[A]ll of [the Prasads's] right, title, and interest in and to the following described real property, together with all* existing or subsequently erected or affixed buildings, improvements and fixtures; *all easements*, . . . and similar matters, (the "Real Property") located in King County, State of Washington.[11]

Thus, this deed of trust encumbered both the Access Strip (the easement) as well as the benefited property to the south (Parcels A and B).

Thereafter, the Prasads acquired title to the Access Strip as a result of the boundary line adjustment it conducted with Rehabitat in May 2007. Thus, both title to the Access Strip as well as the easement in that same property vested in the Prasads at the same time. More importantly, Viking Bank had a security interest by way of its deed of trust in the same property at the time when the Prasads owned the property. Elimination of the easement would have prejudiced the bank in at least two ways. First, it would have lost part of its collateral for the loan. Second, it would also have lost access to and from 170th Street in the

---

11 Clerk's Papers at 140 (emphasis added).

event of foreclosure. For these reasons, under a well-established exception to the merger doctrine, merger does not apply. Doing so would have prejudiced the bank.

Leganieds acknowledges that one exception to merger is where applying the doctrine "would prejudice the rights of innocent third persons."[12] Nevertheless, it argues that the merger doctrine extinguished the easement under the circumstances of this case. It cites Schlager v. Bellport[13] to support its argument that "Washington courts have no trouble applying the merger doctrine" to easements.

But that is not the question. Rather, the question is whether a well-established exception to the merger doctrine applies to the circumstances of this case. As we have explained, the exception does apply. Schlager does not support a different result.

There, this court determined that merger applied, extinguishing a height restriction covenant. But this court reached that conclusion because there were no outstanding interests in the dominant or servient lots that were unified under single ownership.[14] Thus, that case is distinguishable from this one.

Leganieds also argues that merger applies because WT Properties was not an innocent third person. The innocence or lack thereof of WT Properties is immaterial to the proper analysis of whether merger applies. That is because

---

[12] Appellant's Opening Brief at 22.

[13] 118 Wn. App. 536, 76 P.3d 778 (2003).

[14] Id. at 541-42.

Viking Bank, not WT Properties, was the innocent third person whose interests would have been prejudiced by the application of the merger doctrine.

Likewise, it is also irrelevant that the bank is not a party to this litigation. What is relevant is that it had a security interest in the property at the relevant time: when the Prasads owned the property.

Leganieds further argues that "[t]here has been no showing that Viking Bank, was, or would be, harmed in any way by" merger. We previously explained why we reject this argument.

Lastly, Leganieds argues that Washington has not adopted a "mortgage" exception to the merger doctrine. It is unclear to this court what Leganieds means by this argument.

Both the supreme court and lower courts in this state have recognized the existence of several exceptions to application of the merger doctrine. One of them is the innocent third person exception that governs this case. This is an exception recognized both by the courts of this state as well as other respected authorities.

It is not relevant that the innocent third person in this case is the holder of a deed of trust, which is a "species" of a mortgage.[15] This is not a bar to the application of the rule. So, we simply do not accept this argument to the contrary.

---

[15] Rustad Heating & Plumbing Co. v. Waldt, 91 Wn.2d 372, 377, 588 P.2d 1153 (1979).

## RESTRICTIVE COVENANT

Leganieds also takes issue with the trial court's dismissal, without prejudice, of its claim that the easement should be extinguished on the ground that it violates a use restriction in the Maybrook Plat. We hold that the trial court correctly ruled that this claim is not ripe for consideration.

Leganieds makes two related arguments. First, it argues that the easement was invalid upon its formation. Second, it argues that, if it exists, its use must be enjoined. Both arguments are premised on the existence of a restrictive covenant that restricts use of the property subject to the easement to "residential" purposes. And neither deals with the elements of ripeness, which we now discuss.

### Ripeness

Leganieds argues that the trial court erred in concluding that Leganieds's claim to invalidate the easement and enjoin its use was not ripe. We disagree.

Claims are ripe for judicial review "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'"[16] A court must also consider the hardship to the parties if the court declines to address the issue.[17] But "[c]urrent hardship is not a strict requirement for

---

[16] State v. Cates, 183 Wn.2d 531, 534, 354 P.3d 832 (2015) (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010)).

[17] Id.

ripeness."[18] Ripeness concerns are satisfied if there is a "sufficient immediate effect."[19]

We review de novo whether an issue is ripe.[20]

Here, Leganieds seeks to invalidate the easement and enjoin its use based on a restrictive covenant that prohibits uses other than "residential" on the property. The property to which the easement is subject is also subject to this restriction of record. On this basis, Leganieds seeks relief.

WT Properties raises a number of defenses to these claims. Among them is that the covenant may not be enforced against a non-owner and that equitable doctrines of unclean hands and estoppel bar enforcement of this restrictive covenant.

In sum, further factual development of the record is required to test whether these defenses are proper. Accordingly, at least one of the elements of the ripeness requirement is not met. The trial court properly dismissed, without prejudice, Leganieds's claims on the basis they were not ripe for consideration.

---

[18] Jafar v. Webb, 177 Wn.2d 520, 525, 303 P.3d 1042 (2013).

[19] Id.

[20] Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 209, 293 P.3d 413 (2013).

Leganieds argues that the restrictive covenant should "not [be] subject to injunction standards or technicalities about whether a covenant can be enforced against an easement holder or only against fee owners." But it cites no authority for this argument, and we need not consider it further.[21]

We affirm the Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Cross Motion for Summary Judgment.

_Cox, J._

WE CONCUR:

_Trickey, ACJ_

_Appelwick_

---

[21] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).